UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN PARKS,<br><br>               Plaintiff,<br><br>     -against-<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION; SARA MEDINA, Principal of PS 85; ALLISON KRENN, Assistant Principal of PS 85; MARISSA SORBARO, Assistant Principal of PS 85,<br><br>               Defendants | **COMPLAINT**<br><br>**ECF CASE**<br><br>22 Civ. \_\_\_\_<br><br>**JURY TRIAL DEMANDED** |

Plaintiff SUSAN PARKS, by her attorneys, GLASS HARLOW & HOGROGIAN LLP, as and for her Complaint against Defendants, respectfully allege as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action based on unlawful age discrimination and retaliation in violation of the federal Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. 2000e et. seq., the New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").

2.     Plaintiff seeks economic, compensatory damages and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief pursuant to federal and state and city laws.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal claims for age discrimination under the ADEA.

4.      This action's venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because Plaintiff is employed as a teacher for the New York City Department of Education in the Bronx, New York.

5.      This Court has the authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6.      This Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367(a).

## PARTIES

7.      Plaintiff SUSAN PARKS is a resident of the County of Westchester and the State of New York, and a general education elementary school teacher employed within the school system operated by the New York City Department of Education.

8.      At all times relevant herein, Defendant New York City Department of Education ("NYCDOE") is a city school district established under the laws of the State of New York and was Plaintiff's employer.

9.      At all times relevant herein, Defendant SARA MEDINA is the principal of PS 85 in the Bronx, New York. She is sued in both her official and individual capacity.

10.     At all times relevant herein, Defendant ALLISON KRENN is an Assistant Principal of PS 85 in the Bronx, New York. She is sued in both her official and individual capacity.

11.     At all times relevant herein, Defendant MARISSA SORBARO is an Assistant Principal of PS 85 in the Bronx, New York. She is sued in both her official and individual capacity.

## STATEMENT OF FACTS

**Background Prior to the 2019-20 School Year**

12.     Plaintiff SUSAN PARKS ("Plaintiff" or "Ms. Parks") began her employment with the New York City Department of Education ("DOE") as a general education elementary school teacher in September 2000 at PS 306 in the Bronx.

13.     Ms. Parks is seventy, with a D/O/B of May 30, 1952.

14.     From September 2000 to August 2008, Ms. Parks continued teaching at PS 306. During these eight years, she received exclusively "Satisfactory" ratings, and then primarily "Effective" ratings when her school switched to the Danielson rubric.

15.     She never received an "Unsatisfactory" or less-than-effective annual rating during her eight years at PS 306.

16.     She did not receive any disciplinary letters to file while at PS 306.

17.     On August 28, 2008, Ms. Parks transferred to PS 85 in the Bronx, under the leadership of Principal Ted Husted.

18.     Ms. Parks received "Effective" overall ratings from Principal Husted during her final four years under his leadership: the 2015-16 through the 2018-19 school years.

19.     In or around February of 2019, Sara Medina became principal of PS 85.

20.     Beginning in September of 2019, Principal Medina began targeting the oldest and most senior teachers at the school in order to remove them from PS 85 or to create a hostile work environment so extreme that they had no choice but to resign.

3

**2019-20 School Year**

21.     In October 2019, Ms. Parks had been working in an after-school/extended learning program when she developed a health issue involving her blood pressure. As a result, she had to quit the afterschool program. Ms. Parks informed Principal Medina that her reason for quitting the after-school/extended learning program was due to her health issues.

22.     After Ms. Parks quit, on or about October 15, 2019, Principal Medina issued her an Unsatisfactory rating ("U rating") for the program, purportedly due to an allegation that Ms. Parks violated school policy by calling a student's parent during instructional. Although Ms. Parks denied this allegation, it is notable that this allegation occurred after she received her U-rating, thereby invalidating any possibility that Ms. Parks' U-rating was due to this allegation.

23.     Notably, a similarly situated younger teacher, Rebecca Bodo, age 30, also quit the program, yet she did not receive a U rating.

24.     As a result of this U rating, Ms. Parks was not able to claim her retention rights to per session, summer school, and overtime work she had engaged in during previous school years. Accordingly, when Ms. Parks subsequently applied for summer school during the Summer of 2020 as well as per session overtime positions for the following school year, she was denied the opportunity, despite younger teachers with less seniority being granted the opportunity.

25.      For the remainder of the 2019-20 school year, Principal Medina issued Ms. Parks less-than-effective ratings in an observation report which did not accurately reflect her pedagogy and teaching abilities.

26.     Additionally, Principal Medina issued Ms. Parks unwarranted disciplinary letters to file during the 2019-20 school year.

4

27.     In or about May 2020, Principal Medina denied Ms. Parks' teaching preference for the 2020-21 school year. Instead of her preferred fifth grade class—which she had taught most of her entire career—she was assigned a second-grade class. Notably, Principal Medina assigned the fifth-grade classes to younger teachers. Additionally, although teaching second grade was Ms. Parks' third preference choice, she was ultimately moved to a first grade Integrated Co-Teaching ("ICT") class during the 2020-21 school year, which was not one of her preferences.  As a result, Ms. Parks was assigned a co-teacher, Jeannette Diaz, for the school year.

**2020-21 School Year**

28.     Throughout the 2020-21 school year, Principal Medina continued to issue Ms. Parks less-than-effective observation reports and unwarranted letters to file. As a result, Ms. Parks received a "Developing" Measures of Teacher Practice ("MOTP"), which is based on the composite scores of her observations for the year.

29.     Notably, Ms. Parks' co-teacher, Ms. Diaz, received positive ratings from the administration, while Ms. Parks continued to receive less-than-effective ratings, even though they co-planned and co-taught each lesson.

30.     In or about May 2021, once again Principal Medina denied Ms. Parks' teaching preference for a fifth-grade class and assigned her to teach a third-grade class. This was the second year in a row that Principal Medina denied Ms. Parks one of her top two preferences.

31.     On June 5, 2021, Ms. Parks complained to her union that there were at least five individuals over the age of 50 whom Principal Medina was targeting.

32.     On June 22, 2021, Ms. Parks filed a complaint of age discrimination with the DOE's Office of Equal Opportunity ("OEO"). To date, OEO has not contacted her nor is she aware of any action OEO has taken.

33.     Ms. Parks taught in the Summer Rising program during the Summer of 2021.

34.     On or about August 11, 2021, Ms. Parks received a U rating in the Summer Rising program. This was her first time ever receiving a U rating for summer school. Upon information and belief, Ms. Parks was the only teacher in the whole program who received a U rating. She was also the only teacher to teach a class with 25 students; all other classes had 15 students or less and were taught by younger teachers. Moreover, younger teachers were given advance notice of their observations, whereas Ms. Parks was not.

**2021-22 School Year**

35.     Principal Medina continued to issue Ms. Parks negative observations and disciplinary letters to file during the 2021-22 school year. Upon information and belief, Principal Medina and her administrators observed Ms. Parks in order to harass her on a near constant basis, sometimes daily.

36.     On or about October 31, 2021, Principal Medina issued Ms. Parks an improvement plan and warned Ms. Parks that she could be brought up on Education Law Section 3020-a charges, despite the fact that she had received an "Effective" overall rating for the previous school year. Upon information and belief of Ms. Parks, this violated her contractual rights and was done by Defendants to harass her.

37.     On November 29, 2021, Principal Medina denied Ms. Parks' request to attend SEL Professional Development ("PD") for no reason.

38.     In addition to the negative treatment Ms. Parks has experienced, Principal Medina has treated other senior teachers in a disparate fashion. Specifically, Principal Medina and her administration has targeted Dolores Puccio (age 60), Jose Ojeda (age 65), Mary O'Sullivan (age 58), Maribel Maralunda (age 55), Phil Gonzalez (age 60), and Jody Lovallo (age 55).  All of these teachers started to receive lower ratings in their observation reports, as well disciplinary letters to file, after Principal Medina assumed leadership. As a result of this discriminatory behavior, many of these senior teachers retired or resigned. For example:

   a.  Mr. Ojeda received an improvement plan despite receiving overall "Effective" annual ratings. Following receipt of his improvement plan, Mr. Ojeda's ratings suddenly plummeted, and he received primarily "Ineffective" and "Developing" ratings. After being served with Education Law Section 3020-a charges seeking his termination, Mr. Ojeda retired in 2021.

   b.  Similarly, Ms. Lovallo received an improvement plan despite receiving overall "Effective" annual ratings. She was also given numerous different assignments and as a result moved to different classes multiple times during the past several years. As with Mr. Ojeda and other senior teachers, following receipt of her improvement plan, Ms. Lovallo's ratings suddenly plummeted, and she received primarily "Ineffective" and "Developing" ratings.

   c.  After receiving unwarranted disciplinary letters to file and being treated in a disdainful and rude manner by Defendants–including being told not to share his opinions with younger teachers during staff meetings–Mr. Gonzalez retired in early 2022.

    d.   Mrs. O'Sullivan, an untenured teacher, was issued an improvement plan and numerous unwarranted disciplinary letters to file and was eventually terminated from employment. Her younger co-teacher, Ms. Berkowitz (age 38), received no letters to file.

    e.   Mrs. Maralunda, who had the most seniority in the building, was not given any of her choices on her preference sheet and ultimately placed in a self-contained class where she received little support for her students with special needs, some of whom were sent to a school in District 75 after she left. Notably, District 75 provides highly specialized instructional support for students with significant challenges, such as autism spectrum disorders, significant cognitive delays, emotional disabilities, sensory impairments, and multiple disabilities. Ms. Maralunda retired at the end of the 2021 school year due to the lack of support and hostile work environment she experienced from Defendants.

    f.   Ms. Puccio, an "Effective" rated teacher all her career, received numerous letters to file during the 2019-20 school year that caused her so much stress and anxiety that she retired at the end of the school year.

39.    Ms. Parks continued to relentlessly receive negative evaluations and/or disciplinary letters from January through April 2022 from Principal Medina and her administration.

40.    Upon information and belief of Ms. Parks, the allegations that Principal Medina made against her during the 2020-21 school year were without merit and were done in an effort to target her due to her age, because younger teachers engaged in similar conduct yet did not receive disciplinary letters.  For example, Principal Medina issued Ms. Parks a letter to file for allegedly

failing to input her end of unit assessment data in a timely manner. Although Ms. Parks denied this allegation, of note is that Glisenia Franco, a younger teacher, was accused of similar alleged misconduct, yet did not receive a disciplinary letter to file.

41.     Due to the plethora of unwarranted allegations and disciplinary letters, the constant scrutiny from her supervisors, and numerous false less-than-effective observations that Ms. Parks received, she experienced a level of stress that she had never experienced during her entire teaching career. Indeed, Ms. Parks received nine disciplinary letters to file since November 2019. This stress greatly impacted her teaching performance and resulted in her experiencing a hostile work environment.

42.     Additionally, Principal Medina and her administration treated Ms. Parks in a disparate fashion as compared to younger teachers in the following ways:

a.   Ms. Parks utilized google slides during her lessons and would have her lesson plan on google slides. Despite this, Principal Medina would falsely accuse Ms. Parks of not having her lesson plans during observations. Notably, younger teachers also used google slides and would post their lesson plans on google slides yet were not accused of not having their lesson plans during observations.

b.   Ms. Parks received a disciplinary letter for failure to input data in 2022. However, Mrs. Franco, a younger teacher, never received a disciplinary letter despite being accused of the same allegation.

c.   Defendants would occasionally conduct observations of Ms. Park during lessons that were clearly and objectively effective lessons. On each such occasion, Defendants would not memorialize the observation. Defendants only memorialized

9

observations during lessons in which they noticed a short-coming, as opposed to memorializing effective lessons. In contrast, Defendants would memorialize effective lessons for younger teachers, as opposed to picking and choosing which observations to memorialize.

d.  Ms. Parks received a disciplinary letter to file in late 2021 regarding the disruptive behavior of a child and her class management in regard to the situation. The student was eventually removed to the classroom of a younger teacher, Sara Cruz, where he continued his disruptive behavior. Upon information and belief of Ms. Parks, Ms. Cruz was never disciplined for her classroom management regarding this student.

e.  Ms. Parks and other senior teachers were asked to provide weekly lesson plans, whereas younger teachers were not.

43.    On or about April 19, 2022, Ms. Parks dual filed a discrimination complaint with both the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination and retaliation.

44.    On or about May 6, 2022, Ms. Parks was served Education Law Section 3020-a charges seeking the termination of Ms. Parks' employment. The charges are based on false accusations made by Principal Medina and her administrators.

45.    On or about May 12, 2022, Ms. Parks was removed from PS 85 and reassigned pending her Education Law Section 3020-a charges.

46.    On or about June 3, 2022, Ms. Parks filed a notice of claim against NYCDOE, Principal Medina, and/or City of New York based on their alleged violations of the NYSHRL and

the NYCHRL. Ms. Parks asserted claims of age discrimination/ hostile work environment and retaliation.

47.     After withdrawing her SDHR/EEOC complaint for administrative convenience, on or about September 26, 2022, Ms. Parks received a notice of right to sue letter from the EEOC, dated September 22, 2022. See Exhibit A attached hereto.

## FIRST CLAIM FOR RELIEF
### (Discrimination / Hostile Work Environment in Violation of the ADEA)

48.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

49.     The ADEA prohibits discrimination and disparate treatment by employers on the basis of age.

50.     Plaintiff is over forty and a member of the protected class.

51.     Defendants, through the aforementioned conduct, have violated the ADEA by discriminating against Plaintiff based on her age. The discriminatory conduct and harassment included, but was not limited, to issuing Plaintiff multiple less-than-effective observation reports, disciplinary letters to file, and U-ratings; denying her teaching preferences; per session opportunities; and professional development opportunities.

52.     Defendants took the aforementioned actions against Plaintiff but did not act in such a manner towards younger, similarly situated teachers.

53.     Defendants additionally treated other senior teachers in a disparate fashion in comparison to younger teachers.

54.     The unlawful acts of Defendants alleged herein were sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and to create an abusive, intimidating, hostile and offensive working environment.

55.     Plaintiff perceived the work environment to be abusive, hostile, and offensive.

56.     Defendants tolerated, condoned, ratified, and engaged in the hostile work environment.

57.     Defendants knew or should have known of the hostile work environment and failed to take remedial action.

58.     As detailed herein, Defendants' unlawful acts were frequent, severe, at times humiliating, and unreasonably interfered with Plaintiff's job performance. The work environment created by Defendants was therefore objectively hostile or abusive.

59.     A reasonable person would have considered the conduct to be significant and not trivial or petty.

60.     As a result, Plaintiff suffered damages in an amount to be determined at trial.


**SECOND CLAIM FOR RELIEF**
**(Discrimination / Hostile Work Environment in Violation of the NYSHRL)**

61.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

62.     Defendants, through the aforementioned conduct, have violated the NYSHRL by discriminating against Plaintiff based on her age.

63.     Defendants Medina, Krenn and Sorbaro were, at all relevant times, Plaintiff's supervisors under the NYSHRL.

64.     Defendants Medina, Krenn and Sorbaro aided and/or abetted the discriminatory conduct in violation of the NYSHRL by issuing Plaintiff less-than-effective evaluation reports and unwarranted disciplinary letters to file.

65.     Defendants treated Plaintiff less well than similarly situated younger teachers.

66.     Plaintiff perceived the work environment to be abusive, hostile, abusive, and offensive.

67.     Defendants tolerated, condoned, ratified, and engaged in the hostile work environment.

68.     Defendants knew or should have known of the hostile work environment and failed to take remedial action.

69.      As a result, Plaintiff suffered damages in an amount to be determined at trial.

70.     Defendants' extreme and outrageous treatment of Plaintiff was willful and intentional, causing Plaintiff severe emotional distress, due to which Plaintiff is entitled to an award of punitive damages against Defendants.

## THIRD CLAIM FOR RELIEF
### (Discrimination / Hostile Work Environment in Violation of the NYCHRL)

71.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

72.     At all times relevant to this Complaint, Defendants were, and continue to be, employers within the meaning of NYCHRL § 8-102(5) and employed employees, including Plaintiff.

73.     The NYCHRL makes it unlawful to discriminate against any individual on the basis of age.

74.     Defendants engaged in unlawful discriminatory practices as that term is defined by NYCHRL.

75.     Defendants treated Plaintiff less well than similarly situated younger teachers.

76.     As a result of such conduct by the Defendants, Plaintiff has suffered damages and is entitled to compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of the Defendants' illegal conduct.

## JURY DEMAND

Plaintiffs hereby demand a trial by Jury.

## PRAYER/DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in her favor against Defendants as follows:

A.     A declaratory judgment that Defendants are in violation of the federal ADEA;

B.     A declaratory judgment that Defendants are in violation of the New York State Human Rights Law;

C.    A declaratory judgment that Defendants are in violation of the New York City Human Rights Law;

D.    Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to the ADEA, the New York State Human Rights Law and New York City Human Rights Law;

E.    Awarding Plaintiff costs and reasonable attorneys' fees; and

F.    Such other and further relief as to this Court may deem necessary, just, and proper.

DATED:        New York, New York
              October 10, 2022

                                        Respectfully submitted,


                                         /s/  Jordan Harlow
                                        Jordan F. Harlow, Esq.
                                        GLASS HARLOW & HOGROGIAN, LLP
                                        Attorneys for Plaintiff
                                        85 Broad Street, 16th Floor
                                        New York, NY 10004
                                        (212) 537-6859